## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-CR-0205-CVE |
| | ) | (19-CV-0716-CVE-CDL) |
| KERRY SLOAN, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION AND ORDER</u>

Now before the Court is defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 88).  Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  Defendant's § 2255 motion asserts four ground for relief challenging his conviction and sentence.  Dkt. # 88.  However, he has filed approximately 70 supplements to his motion raising additional claims.  Plaintiff has filed a response (Dkt. # 159) and has attached an affidavit from defendant's former attorney, Stephen Greubel, to its response.  Defendant has filed a reply (Dkt. # 164),[1] and defendant's § 2255 motion is ripe for adjudication.

---

[1]    The reply does not directly rebut arguments raised in plaintiff's response, and the reply is essentially a compilation of defendant's supplements and other documents attached to the supplements.

**I.**

On October 3, 2018, a grand jury returned an indictment charging defendant with knowingly transporting a person less than 18 years of age for the purpose of engaging in illegal sexual activity in violation of 18 U.S.C. § 2423(a).  This crime is punishable by a statutory mandatory minimum sentence of 10 years and the statutory maximum sentence is life imprisonment.  Defendant made his initial appearance on October 11, 2018, and Stephen Greubel, an assistant federal public defender, was appointed to represent defendant.  Dkt. # 9.  The magistrate judge found that defendant should be released on conditions pending trial, but plaintiff filed a motion to revoke pretrial release.  Dkt. # 10.  The Court denied plaintiff's motion and allowed defendant to remain on pretrial release.  Dkt. # 18.  The Court also entered a scheduling order, <u>inter alia</u>, setting the case for jury trial on December 17, 2018.  Dkt. # 17.

Greubel filed a motion to dismiss the indictment on the ground that the indictment failed to specify the nature of the illegal sexual activity that defendant intended to commit.  Dkt. # 23.  Greubel also filed a motion to declare the case complex under the Speedy Trial Act, 18 U.S.C. § 3161 <u>et seq.</u>, and he identified specific matters requiring additional time for pretrial investigation.  Dkt. ## 24, 25.  These matters included the victim's alleged history of making false allegations of sexual assault, defendant's mental health, and evidence tending to show that victim and defendant engaged in a consensual sexual relationship.  Dkt. # 25.  The Court granted the motion to declare the matter a complex case and continued the jury trial to April 2019.  Dkt. # 27.  Greubel also filed four pretrial motions to exclude evidence (Dkt. ## 33, 34, 35, 37).  A grand jury returned a superseding indictment (Dkt. # 44) alleging the same charge as the original indictment but clarifying that the

2

sexual activity intended by defendant, when he engaged in interstate transportation with the victim, was the sexual abuse of a child in violation of OKLA. STAT. tit. 21, § 843.5(E).

On March 26, 2019, defendant appeared for a change of plea hearing, and Greubel advised the Court that defendant intended to plead guilty pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement. Dkt. # 109, at 2. Defendant agreed to give up certain rights, including the right to directly appeal the conviction or sentence, and the parties stipulated that defendant's advisory guideline range would be 151 to 188 months. Dkt. # 55, at 12. Plaintiff also agreed to file a motion for a third point reduction for acceptance of responsibility. Id. The parties advised the Court that a prior and better offer had been made to defendant earlier in the case, and plaintiff had offered defendant a Rule 11(c)(1)(C) plea agreement with a stipulated sentence of 120 months. Id. at 5. However, the offer was conveyed to defendant and he independently chose to reject the earlier plea agreement. Id. at 5-6. The Court noted that defendant had previously received treatment for post-traumatic stress disorder, and defendant was taking medication to help him think clearly. Id. at 7-8. The Court questioned defendant about his competence to proceed with a change of plea and determined that he was competent to proceed. Id. at 9. Defendant stated that he had fully reviewed the plea agreement with his attorney, and he made the choice to plead guilty pursuant to the plea agreement of his own free will. Id. at 10-11.

The Court reviewed the appellate and post-conviction waiver contained in the plea agreement with defendant:

THE COURT:  Do you understand that by entering into this plea agreement and entering a plea of guilty, you are waiving or giving up certain appellate and post-conviction rights?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that waiver is contained in paragraph 3 of your plea agreement and I have an obligation to review it with you on the record.

Do you understand that in consideration of the promises and concessions made by the United States in your written plea agreement, you are knowingly and voluntarily agreeing –

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Just a minute. – to waive the right to directly appeal your conviction and sentence pursuant to 28, U.S.C., Section 1291 and/or 18, U.S.C., Section 3742(a), except that you reserve the right to appeal from a sentence that exceeds the statutory maximum?  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that you are expressly acknowledging and agreeing that the United States reserves all rights to appeal your sentence as set forth in 18, U.S.C., Section 3742(b) and the case of United States v. Booker?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand that you are waiving the right to collaterally attack your conviction and sentence pursuant to 28, U.S.C., Section 2255 except for claims of ineffective assistance of counsel?

THE DEFENDANT:  Yes, Your Honor.

Dkt. # 109, at 18-19.  The Court advised defendant of all of the constitutional rights that he was giving up by changing his plea, including the right to a jury trial.  Id. at 20-21.  Defendant stated that he understood that he had certain constitutional rights and he voluntarily gave up those rights, and he also signed a waiver of his right to a jury trial.  Dkt. # 52.

4

The Court read the superseding indictment to defendant and advised defendant of the elements of the offense that plaintiff would have to prove if the case proceeded to trial. Dkt. # 109, at 25. The Court asked to defendant to state in his own words what he did to commit the offense:

> On June 11, 2017, in Tulsa, Oklahoma, and elsewhere, I knowingly transported a 17-year old female from Texas to Tulsa with the intent that she engage in sexual activity for which I could be charged with a criminal offense under Oklahoma law. Specifically, I intended to have sex with her without consent and, in fact, did have sex with her without consent which is illegal in the state of Oklahoma and under Oklahoma law.

Id. at 26. Plaintiff's counsel made a representation of the facts that it would be prepared to prove at trial, including the victim's testimony that defendant sexually assaulted or raped her multiple times during a trip to Tulsa, Oklahoma in June 2017. Id. at 30. Plaintiff would also have been prepared to offer evidence of two prior incidents of sexual assault that defendant committed during his military service. Id. at 31. The Court accepted defendant's guilty plea and found that defendant's plea was knowing and voluntary. Id. at 33. Defendant's sentencing hearing was set for June 26, 2019 and he remained on release pending sentencing.

The probation office prepared a presentence investigation report (PSR), and the base offense level for an offense under § 2423(a) was 28. Defendant received two level enhancements for harming a minor in his care or custody, influencing a minor to engage in prohibited sexual conduct, and for committing a sex act during the offense. The base offense level was enhanced an additional five levels under United States Sentencing Guideline § 4B1.5. After a three level reduction for acceptance of responsibility, the total offense level was 36. Defendant had no prior criminal history and his criminal history category was I. The advisory guideline range for defendant's offense would

5

have been 188 to 235 months, but the PSR states that the advisory guideline range would be 151 to 188 months if the Court accepted the plea agreement.

On June 24, 2019, Greubel filed a motion to continue the sentencing hearing, because defendant had been admitted to an inpatient facility for mental health treatment. Dkt. # 62. Greubel requested at least a two week continuance of the sentencing hearing. The Court rejected defendant's request for a two week continuance, but the Court granted a brief continuance to provide defendant time to check out of inpatient treatment and travel to the sentencing hearing.[2] Dkt. # 66. The sentencing hearing took place on July 1, 2019, and the Court sentenced defendant to 180 months imprisonment, within the Rule 11(c)(1)(C) plea agreement stipulated guideline range. Dkt. # 70. Greubel states that he met with defendant on July 9, 2019 to discuss the possibility of an appeal, and he advised defendant of the advantages and disadvantages of pursuing an appeal. Dkt. # 159-1, at 5. Defendant advised Greubel that he did not wish to file an appeal, and defendant did not subsequently contact Greubel about filing an appeal. Id.

On August 19, 2019, defendant filed a motion for reduction of sentence (Dkt. # 72), and the Court advised defendant that it would construe the motion as a motion to vacate, set aside, or correct sentence under § 2255. Defendant was given the opportunity to withdraw his motion and file an amended § 2255 motion asserting all claims that he intended to include in his original § 2255 motion. Dkt. # 74. Defendant requested to withdraw his motion for reduction of sentence, and the Court granted his request. Dkt. ## 76, 80. Defendant also alternatively requested that his motion to

---

[2]      The Court reviewed defendant's medical records and noted that he had not advised the treatment facility that he was set to be sentenced to imprisonment on June 26, 2019. Dkt. # 66, at 1. The medical records also did not suggest that defendant would be unable to understand or participate in the sentencing hearing. Id. at 2.

withdraw be construed as a notice of appeal, and the notice (Dkt. # 77) was sent to the Tenth Circuit Court of Appeals.  The Tenth Circuit dismissed the appeal as untimely.  Dkt. # 86.  On December 26, 2019, defendant filed his § 2255 motion and the motion is timely under § 2255(f)(1).

## II.

Defendant's § 2255 motion (Dkt. # 88) asserts four grounds for relief.  Defendant argues that Greubel was ineffective for failing to argue that the offense of conviction did not qualify as a crime of violence (ground one) and that § 2423(a) was unconstitutionally vague in light of recent Supreme Court precedent concerning the statutory definitions of "force" or "crime of violence" (ground two). Dkt. # 88, at 4-5.  Defendant claims that Greubel failed to raise an objection at the sentencing hearing when the Court did not read all of the conditions of supervised release into the record (ground three), and he also argues that Greubel should have argued for a reduced sentence to avoid an unwarranted sentencing disparity with other similar cases (ground four).  Id. at 6-8.  Defendant could be alleging that Greubel was ineffective for failing to file a motion to withdraw defendant's guilty plea or file a notice of appeal.  Defendant also alleges numerous substantive claims that are not based on allegations of ineffective assistance of counsel, including claims of double jeopardy, illegal search and seizure, violation of the Speedy Trial Act, invalid indictment due to racial composition of grand jury, malicious prosecution, failure of the Court to conduct a probable cause hearing, and invalid certification of certain Assistant United States Attorneys (AUSAs).

## A.

Plaintiff argues that defendant's plea agreement contains a waiver of certain post-conviction rights and many of defendant's claims fall within the scope of the waiver.  The Tenth Circuit has established a three-part test to determine if an appellate and post-conviction waiver is enforceable:

> (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . .

United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004).  In determining the scope of an appellate and post-conviction waiver, a court must strictly construe the waiver in favor of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable understanding at the time of the guilty plea."  United States v. Novosel, 481 F.3d 1288, 1291 n.1 (10th Cir. 2007).  Challenges to the voluntariness of a guilty plea generally do not fall within the scope of a waiver.  United States v. Weeks, 653 F.3d 1188, 1197 n.4 (10th Cir. 2011).  Hahn requires the consideration of two factors in considering whether a defendant knowingly and voluntarily agreed to an appellate and post-conviction waiver.  First, the court "examine[s] whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily."  Hahn, 359 F.3d at 1325.  Second, the guilty plea must be the result of an adequate colloquy under Rule 11.  Id.  A miscarriage of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.  Id. at 1327 (quoting United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001)).  A defendant may not avoid enforcement of a waiver under the "otherwise unlawful" exception based on alleged errors in the calculation of his sentence, because this exception is focused on the fairness of the proceedings, rather than result of the proceedings.  United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007).  A miscarriage of justice does not occur when a defendant receives a sentence higher than he expected if that sentence does not exceed the statutory maximum.  United States v. Green, 405 F.3d 1180, 1194 (10th Cir. 2005) (courts should consider the statutory

8

maximum, not the defendant's anticipated sentence under the United States Sentencing Guidelines, to determine if a miscarriage of justice has occurred). The defendant bears the burden to show that a miscarriage of justice has occurred. United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005).

The first Hahn factor is whether defendant's claims raised in his § 2255 motion fall within the scope of his waiver of post-conviction rights. In his plea agreement, defendant agreed to "waive[] the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel." Dkt. # 55, at 3. Some of the claims asserted in defendant's original § 2255 motion (Dkt. # 88) can reasonably be construed as ineffective assistance of counsel claims that are not subject to the post-conviction waiver. However, many of the claims raised in defendant's other filings are simply substantive claims that are not based on allegations of ineffective assistance of counsel. These claims include dismissal of the indictment for speedy trial and grand jury violations, illegal search and seizure, double jeopardy, malicious prosecution, and allegations concerning the validity of the certification of certain AUSAs. Defendant is proceeding pro se and the post-conviction waiver must be construed in light of defendant's reasonable understanding of the waiver, and the Court will consider all claims that can reasonably be construed as ineffective assistance of counsel claims. However, the claims listed above are purely substantive and fall within the scope of the post-conviction waiver. The next factor is whether defendant knowingly and voluntarily waived his rights. The plea agreement states that defense counsel explained defendant's post-conviction rights to him, that he understood those rights, and that he was knowingly and voluntarily waiving certain post-conviction rights. Dkt. # 55, at 3. The Court conducted a thorough colloquy with defendant in which the Court reviewed each of the appellate and

post-conviction rights that he was giving up by entering the plea agreement.  Dkt. # 109, at 19-20.

Finally, the Court must consider whether enforcement of the waiver would result in a miscarriage

of justice. Defendant has made no attempt to show that enforcement of the waiver will result in a

miscarriage of justice, and the Court has not independently found any evidence suggesting that

enforcement of the waiver would be unfair or inequitable.  Defendant received the benefit of the plea

agreement and his sentence was within the advisory guideline range agreed to by the parties.  This

sentence was below the advisory guideline range that would have applied if defendant had not

entered the plea agreement.  The Court finds that the post-conviction waiver contained in the plea

agreement is enforceable, and the Court will limit its review of defendant's § 2255 motion and

related filing only to claims that are based on allegations of ineffective assistance of counsel.

**B.**

Defendant has raised several claims of ineffective assistance of counsel that are not subject

to his waiver of post-conviction rights in the plea agreement.  To establish ineffective assistance of

counsel, a defendant must show that his counsel's performance was deficient and that the deficient

performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v.

Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).  A defendant can establish the first prong by

showing that counsel performed below the level expected from a reasonably competent attorney in

criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's

conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this

determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular

case, viewed as of the time of counsel's conduct."  Id. at 690.  Moreover, review of counsel's

performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense

10

after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

"Force" Clause/Void for Vagueness (Grounds One and Two)

Defendant argues that Greubel was ineffective for failing to argue that his conviction under § 2423(a) was invalid, because plaintiff failed to prove that the statute of conviction qualified as a "crime of violence." Dkt. # 88, at 4. He also argues that his conviction is unconstitutional in light of the Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (2019). Dkt. # 89, at 8-12. Defendant was convicted of knowingly transporting a person less than 18 years of age for the purpose of engaging in illegal sexual activity in violation of 18 U.S.C. § 2423(a), which states:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned, shall be fined under this title and imprisoned not less than 10 years or for life.

11

Section 2423(a) does not include the commission of a "crime of violence" as an essential element of the offense, nor was defendant's sentence enhanced for the commission of a crime of violence. Therefore, Greubel had no reason to challenge defendant's conviction or sentence based on plaintiff's failure to prove that defendant committed a crime of violence, and ground one of defendant's § 2255 motion is denied.

Defendant also argues that Greubel should have filed a motion to dismiss the indictment on the ground that § 2423(a) is unconstitutionally vague in light of recent Supreme Court precedent. This argument is related to his claim above concerning plaintiff's alleged failure to prove that defendant committed a crime of violence, and it is unclear whether defendant is challenging the statute of conviction or certain sentencing enhancements on the ground of vagueness. Dkt. # 89, at 18-22. A basic principle of due process is that a law is void for vagueness "if it does not clearly define its prohibitions." Doctor John's Inc. v. City of Roy, 465 F.3d 1150 (2006). Section 2423(a) plainly states what acts a defendant must commit in order to commit a violation of the statute, and defendant admitted to those elements at his change of plea hearing. Defendant was advised that a conviction under § 2423(a) required that he knowingly transported a minor in interstate commerce and that he did so with the intent to engage in sexual activity for which any person could be charged with a criminal offense. Dkt. # 109, at 26. The statute clearly defines what conduct a person must commit in order to violate the statute, and defendant's arguments concerning Davis and related Supreme Court decisions have no bearing on the validity of his conviction under § 2423(a). To the extent that defendant could be challenging the sentencing enhancements on vagueness grounds, the Supreme Court has determined that the United States Sentencing Guidelines are not subject to a void

for vagueness challenge.  Beckles v. United States,  137 S. Ct. 886 (2017).  Ground two of defendant's § 2255 motion is denied.

Sentencing Hearing Claims (Grounds Three and Four)

Defendant argues that the Court was obligated to read all of the conditions of supervised release into the record at his sentencing hearing, and he claims that Greubel was ineffective for failing to raise this objection at the sentencing hearing.  Dkt. # 88, at 6; Dkt. # 89, at 23.  However, the Court is not required to read the mandatory or standard conditions of supervised release to the defendant at the sentencing hearing, and the minutes of the sentencing hearing and the judgment and commitment (Dkt. # 70) show that defendant was advised of any special or discretionary conditions orally at the sentencing hearing.  United States v. Dingles, 957 F.3d 551 (5th Cir. 2020) (court is not required to read mandatory or standard conditions of supervised release to defendant at sentencing hearing, but discretionary conditions, such as special financial conditions, must be read on the record at the sentencing hearing).  The cases cited by defendant concern instances in which the Court's oral pronouncement of the sentence differs from the written judgment, and none of the cases requires that the standard conditions of supervised release be read into the record at the sentencing hearing.  Dkt. # 89, at 23.  The Court notes that the standard and special conditions are referenced in the PSR and listed in the judgment and commitment, and they are also available on the Court's website.  The Court does not find that a reasonable attorney would have demanded that the Court read all of the conditions of supervised release into the record at the sentencing hearing, and Greubel was not ineffective for failing to make such a request.  Defendant also has not shown that the failure to read the conditions of supervised release into the record prejudiced him in any way.  Ground Three of defendant's § 2255 motion is denied.

Defendant also argues that Greubel should have argued that defendant was eligible for a sentencing reduction based on an excessive disparity between his sentence and the sentences received by other defendants in similar cases. Dkt. # 88, at 8; Dkt. # 89, at 24. However, defendant ignores the fact that he pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement, and the Court sentenced defendant to a term of imprisonment within the advisory guideline range agreed to by the parties. Defendant's plea agreement also contained a waiver of the right to request a downward variance or departure, and the Court would have upheld this waiver if Greubel had attempted to request a downward variance based on an excessive sentencing disparity. Dkt. # 55, at 4. Plaintiff also notes that Greubel could have breached the plea agreement if he requested a sentence below the range of 151 to 188 months, and defendant would have received a higher sentence if the Court relied solely on the calculation of the advisory guideline range in the PSR. Dkt. # 159, at 23. Greubel acted reasonably by declining to request a downward variance based on an excessive sentencing disparity, and ground four of defendant's § 2255 motion is denied.

Failure to File Notice of Appeal (Dkt. # 88, at 3)

Although not listed as a separate claim, defendant states that Greubel provided ineffective assistance of counsel by failing to file a "formal direct appeal despite being advised to do so." Dkt. # 88, at 3. In other filings, defendant acknowledges that Greubel specifically asked if defendant wanted to file an appeal, but defendant was "nonresponsive" and "highly medicated." Dkt. # 151, at 1. Defendant complains that Greubel failed to contact him from August to December 2019, and he claims that Greubel was ineffective for failing to follow up with defendant about the possibility of filing an appeal. Id. at 2. Defendant could also be arguing that Greubel failed to provide adequate representation in connection with defendant's untimely pro se notice of appeal. Dkt. # 173.

14

The judgment and commitment was filed on July 2, 2019, and defendant had 14 days from that date to file a notice of appeal. Greubel states that he met with defendant on July 9, 2019 to advise him of his appellate rights and to determine whether defendant wished to file an appeal. Dkt. # 159-1, at 5. Defendant advised Greubel that he did not wish to pursue an appeal, and defendant never contacted Greubel at a later date to state that he had changed his mind about filing an appeal. Dkt. # 159-1. Greubel states that defendant was "polite and responsive" to his questions and, if defendant had been unresponsive, it would have been Greubel's practice to file a notice of appeal in an abundance of caution. Dkt. # 159-2. Defendant filed an untimely pro se notice of appeal (Dkt. # 77), but nothing in the notice of appeal could be construed as a claim that Greubel ignored a prior request by defendant to file a notice of appeal.

The Supreme Court has clearly established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). While there is no bright-line rule requiring a defense attorney to ask the defendant if he wishes to appeal, an attorney has a duty under the Sixth Amendment to the United States Constitution to consult with his client about the possibility of an appeal if the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. This situation is an exception to the general rule that a defendant must show that his attorney's error had an adverse effect on the proceedings to prevail on a claim on ineffective assistance of counsel, because a defense attorney's failure to file an appeal results in the defendant's forfeiture of a judicial proceeding. Id. at 483. A criminal defendant is not required to show that the appeal would have had merit. Id. at 486. The Tenth Circuit has held that an attorney who disregards a defendant's request to file a notice of appeal is ineffective and this error is presumptively

15

prejudicial.  United States v. Snitz, 342 F.3d 1154, 1156 (10th Cir. 2003).  The remedy for an attorney's failure to file an appeal as requested by a defendant is granting the defendant leave to file a delayed appeal.  United States v. Garrett, 402 F.3d 1262, 1267 (10th Cir. 2005).

The Court finds that defendant's claim that Greubel ignored a request to file a direct appeal is meritless.  There is no dispute in this case that Greubel met with defendant about the possibility of filing an appeal and that defendant did not ask Greubel to file an appeal at that meeting.  Dkt. # 159-1, at 5; Dkt. # 156.  Defendant states that he was "nonresponsive, highly medicated literally fighting to stay alive in that zoo (Tulsa Jail)."  Dkt. # 151, at 1.  It appears that defendant changed his mind about filing an appeal at some point after meeting with Greubel, but defendant does not make any allegation that he reached out to Greubel about filing an appeal after the July 9, 2019 meeting.  Instead, he argues that Greubel failed to follow up with defendant after the meeting.  Greubel's affidavit (Dkt. # 159-1, at 5) and declaration (Dkt. # 159-2) are clear that Greubel believed that defendant understood the advice that Greubel offered concerning the advantages and disadvantages of filing an appeal, and Greubel understood that defendant made an informed decision not to proceed with an appeal.  Greubel also states that it would have been his practice to preemptively file a notice of appeal if defendant had been unresponsive or was unequivocal about whether to proceed with an appeal.  Dkt. # 159-2.  There is nothing in the record suggesting that defendant asked Greubel to file an appeal within 14 days of entry of the judgment and commitment, and defendant acknowledges that Greubel consulted with him about filing an appeal before the time to do so expired.  Defendant has not made a colorable showing that Greubel failed to consult with him about filing an appeal or ignored a direct request by defendant to file a notice of appeal.  Defendant could also be arguing that Greubel failed to provide assistance in connection with

16

defendant's attempt to proceed with a time-barred appeal.  Dkt. ## 156, 173.  Defendant filed a <u>pro se</u> notice of appeal on October 21, 2019, and plaintiff moved to dismiss the appeal as untimely.  The Court has reviewed the docket sheet of the appeal, and Greubel filed a response to the motion to dismiss stating that he was not aware of any exceptions to the time bar that would allow defendant to proceed with an untimely appeal.  Greubel's statements concerning the untimeliness of defendant's appeal were correct, and he had no obligation to raise frivolous arguments in support of defendant's clearly untimely notice of appeal.

<u>Withdrawal of Guilty Plea</u>

Defendant makes several claims in relation to his guilty plea.  Defendant asserts that Greubel was ineffective for failing to file a motion to withdraw defendant's guilty plea as he requested.  Dkt. # 94, at 11-16.  He argues that he did not voluntarily or intelligently change his plea, and he could be asserting that he was factually innocent of an offense under § 2423(a).  Dkt. ## 117, 118, 125, 131, 179.  Defendant could also be asserting a claim based on Greubel's alleged failure to convey a plea offer to defendant.  Dkt. # 94, at 24; Dkt. # 118, at 1.

On June 17, 2019, defendant e-mailed Greubel a "memmorandum" stating that he was "requesting a retraction of [his] plea based on a few considerable factors that influence me to make a hasted and ill-advised decision."  Dkt. # 94, at 11.  Defendant's memorandum does not provide any explanation for his basis for wanting to withdraw his plea.  Greubel's response exhibits some confusion about defendant's  e-mail, and he asked defendant to clarify whether he was attempting to withdraw his guilty plea.  <u>Id.</u> at 10.  Greubel followed up with defendant the next day and stated that he was "concerned about the material you have been sending me in your recent emails."  <u>Id.</u> at 16.  Greubel requested that defendant come to his office for a "lengthy" meeting, and he asked

defendant to bring all materials in defendant's possession concerning his "medical and mental health" around the time of the change of plea hearing. Id. Greubel and defendant were already scheduled to have a meeting on June 20, 2019, and Greubel asked defendant if he still intended to come to the meeting. Id. However, either defendant or his wife called Greubel to cancel the June 20, 2019 meeting, and the sentencing hearing was subsequently continued to July 1, 2019 after defendant sought inpatient mental health treatment. Dkt. # 159-1, at 4. Greubel met with defendant before the sentencing hearing, in part, to discuss defendant's prior statements that he wanted to withdraw his plea, and defendant advised Greubel that he no longer wanted to withdraw his guilty plea. Id. at 5.

Rule 11(d)(2)(B) permits a defendant to withdraw a guilty plea if he can "show a fair and just reason for requesting the withdrawal." The Supreme Court has issued one decision considering the "fair and just" standard of Rule 11, and it is clear that the Supreme Court treats a fully accepted guilty plea as a conclusive act similar to a jury verdict. United States v. Hyde, 520 U.S. 670 (1997). Citing the advisory notes to Rule 11, the Supreme Court remarked:

> Given the great care with which pleas are taken under [the] revised Rule 11, there is no reason to view pleas so taken as merely "tentative," subject to withdrawal before sentence whenever the government cannot establish prejudice. "Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a 'grave and solemn act,' which is 'accepted only with care and discernment.'"

Id. at 676-77. Defendant bears the burden to show a fair and just reason for withdrawal of his guilty plea. United States v. Black, 201 F.3d 1296, 1299 (10th Cir. 2000). The Tenth Circuit has

recognized seven factors that a district court should consider in ruling on a motion to withdraw a guilty plea:

> (1) whether the defendant has asserted his innocence; (2) whether the government will be prejudiced if the motion is granted; (3) whether the defendant has delayed in filing the motion; (4) the inconvenience to the court if the motion is granted; (5) the quality of the defendant's assistance of counsel; (6) whether the plea was knowing and voluntary; (7) whether the granting of the motion would cause a waste of judicial resources.

Id. at 1299-1300; see also United States v. Graham, 466 F.3d 1234, 1238 (10th Cir. 2006).  The Tenth Circuit has consistently affirmed the use of these factors.  See United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007); United States v. Yazzie, 407 F.3d 1139, 1142 (10th Cir. 2005); United States v. Sandoval, 390 F.3d 1294, 1298 (10th Cir. 2004).  Even if the government can not show that it will be prejudiced, this does not remove the burden from the defendant to provide a fair and just reason for withdrawing his plea.  United States v. Rhodes, 913 F.2d 839, 845-46 (10th Cir. 1990).

The Court will initially consider defendant's claim that Greubel was ineffective for failing to file a motion to withdraw defendant's guilty plea.  Defendant has provided an e-mail showing that he asked Greubel to file a motion to withdraw his plea, and Greubel does not dispute that he was aware of defendant's request.  However, Greubel states that he discussed the matter with defendant before the sentencing hearing, and defendant advised Greubel that he did not wish to withdraw his plea and he wanted to proceed with the sentencing hearing.  Dkt. # 159-1, at 5.  Based on defendant's filings and Greubel's affidavit, there could be a factual dispute concerning whether defendant told Greubel that he did not wish to withdraw his plea, because the matter requires the Court to make a finding as whether defendant or Greubel is credible.  See Dkt. # 94, at 35; Dkt. # 159-1, at 5.

However, the Court can analyze a claim under either the performance or the prejudice prong of an ineffective assistance counsel claim and deny relief if the defendant fails to make a sufficient showing of one of the prongs.  United States v. Hollis, 552 F.3d 1191, 1194 (10th Cir. 2009).  The Court finds that defendant cannot establish that he was prejudiced by counsel's alleged failure to file a motion to withdraw plea, because defendant has not shown any probability that the Court would have granted his motion.  Defendant has made vague assertions that could be construed as a claim of factual innocence, but he admitted the essential elements of the offense at the change of plea hearing and nothing in his filings can be construed as an attempt to withdraw his factual admissions. Defendant did not inform Greubel that he might seek to withdraw his guilty plea until shortly before the sentencing hearing, and he delayed in seeking to withdraw his plea.  The parties and the Court would have been inconvenienced by defendant's untimely request to withdraw his guilty plea, because the PSR had been provided to the parties and counsel for both parties were fully engaged in preparing for the sentencing hearing.  The Court accepted defendant's guilty plea after a lengthy change of plea hearing, and the Court had no concerns as to the knowing and voluntary nature of his guilty plea.  Defendant has not made a colorable showing that the Court would have permitted him to withdraw his guilty plea, and Greubel was not ineffective for failing to file a motion to withdraw defendant's guilty plea.

Defendant could be asserting a claim based on Greubel's alleged failure to consult with defendant about a plea offer made by plaintiff at the early stages of the case.  Dkt. # 94, at 24.  It appears from an e-mail exchange attached to one of defendant's filings that defendant believed that plaintiff would have allowed him to plead guilty pursuant to a Rule 11(c)(1)(C) plea agreement for a 24 month sentence.  Dkt. # 94, at 24.  Greubel informed defendant that no such offer had been

made, and Greubel explained that defendant had previously rejected a plea agreement for 120 month sentence. Id. Greubel also explained that the mandatory statutory minimum sentence for the charged offense was 120 months. Id. Greubel's statement is consistent with the information the parties provided to the Court at the change of plea hearing. Dkt. # 109, at 5. The parties advised the Court that plaintiff had initially offered a plea agreement for a stipulated sentence of 120 months, and defendant stated on the record that he made his own decision to reject the proposed plea agreement. Id. at 5-6. The record is clear that Greubel did convey the original plea offer to defendant and he made his own decision to reject that offer, and defendant's claim that he was not informed of the original plea offer is meritless.

**III**.

Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a COA before appealing a final order in a proceeding under 28 U.S.C. § 2255. Section 2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right. The Court does not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS THEREFORE ORDERED** that  defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. #  88) is **denied**.  A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability as to any claim raised in defendant's § 2255 motion.

**IT IS FURTHER ORDERED** that Dkt. ## 102, 103, 104, 107, 163, and 171 are **moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall transmit this opinion and order and the judgment to the Tenth Circuit Court of Appeals in connection with Tenth Circuit Case No. 21-5007.

**DATED** this 22nd day of February, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

22